J. M. NEELAND *et al.* v. THE STATE OF KANSAS, *on the relation of S. B. Bradford, Attorney General.*

1. OFFICE—*Action to Determine Title.* Injunction is not the proper remedy to determine the title to an office, but *quo warranto* is.

2. QUO WARRANTO, *Not Injunction, to Restrain Official Acts.* Where two sets of persons are attempting to hold the county offices, one set at S., as the county seat, and the other set at K., as the county seat, and each set claims to be legally entitled to hold such offices, and it is not shown clearly which set is entitled to hold the offices, nor which set is *de facto* the officers, *held*, that injunction will not lie to restrain either set from acting, but the proper remedy is *quo warranto.*

*Error from Hamilton District Court.*

INJUNCTION by *The State* against *J. M. Neeland* and others· The opinion contains a sufficient statement of the case.

*Rossington, Smith & Dallas,* and *Johnson & Cutlip,* for plaintiff in error.

*S. B. Bradford,* attorney general, for defendant in error; *L. J. Webb,* and *Edwin A. Austin,* of counsel.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the attorney general, in the name of the state of Kansas, on May 23, 1887, in the district court of Hamilton county, against J. M. Neeland, Joseph Voorhees, F. H. Pomeroy, J. M. Hicks, J. J. Milliken, Martin S. Culver, H. G. Fulton, J. R. Campbell, G. C. W. Richards, Mansfield Young, John Spear, and H. C. Wherritt, for an injunction, temporary and perpetual, to restrain the defendants "from exercising or performing any power, privilege or duty conferred by law upon county officers." The temporary injunction prayed for was allowed by the judge of the district court at chambers at the commencement of the action, and without any notice to the defendants. Afterward a motion was made by the defendants to discharge

the temporary injunction, which motion was heard on June 10, 1887, by the judge of the district court at chambers, and the motion was overruled; and to reverse the order of the district judge granting the temporary injunction, and the order refusing to discharge the same, the defendants, as plaintiffs in error, have brought the case to this court.

The plaintiffs in error, defendants below, claimed in their motion presented to the judge below, and now claim in this court, that the injunction was erroneously granted for several reasons, as follows:

"1. The petition upon which the said temporary injunction was granted does not state facts sufficient to authorize the granting of the same.

"2. Said petition is insufficient in law to authorize the granting of said restraining order or injunction.

"3. Said petition on its face seeks to enjoin the defendants, as officers, from exercising their duties as such officers, and hence is insufficient on that ground.

"4. Said petition seeks an injunction restraining officers exercising the duties of their offices, pending litigation for said offices.

"5. Said injunction is prematurely brought.

"6. The plaintiff has not legal capacity to sue.

"7. That the said order of temporary injunction was granted without notice to said defendants or their attorneys, and contrary to rule 14 of the rules prescribed by the honorable judge of this [the district] court."

It appears that Hamilton county was organized in 1886; that the town of Kendall was designated as the temporary county seat of the county; that at the first election no place was chosen as the permanent county seat of the county; that on November 2, 1886, the day of the general election for that year, a second election was held for the purpose, among others, of permanently locating the county seat of the county, and of electing county officers. It appears that various places were voted for for the county seat, and various persons were voted for for the several county offices. Two principal tickets for the several county offices were voted at that election, one of

which was generally supported by the people favorable to the town of Syracuse for the county seat, and the other by the people favorable to other places for the county seat. It is admitted by the plaintiff below that the following persons who were supported by the opposition to Syracuse, were elected, to wit: A. A. G. Stayton, county commissioner; C. C. Mills, sheriff; J. M. Hicks, county clerk, and J. W. Beatty, county surveyor. But it is claimed and alleged by the plaintiff below that all the remainder of the persons whose names were on the opposition ticket were defeated. It is also alleged that the town of Syracuse was chosen as the permanent county seat of the county. This we know from the evidence in another case which we have just decided, (*The State, ex rel., v. Mills, Sheriff,* ante, p. 76,) is not true. In fact, no place was chosen at that election as the permanent county seat of the county, and the town of Kendall still remains the temporary county seat. For the purposes of this case, however, we shall consider the allegation of the plaintiff below, that Syracuse has been chosen the permanent county seat, as true. It is also alleged by the plaintiff below that J. H. Bentley was elected treasurer of the county, but from the evidence in another case which we have recently decided, (*The State, ex rel., v. Comm'rs of Hamilton Co.,* ante, p. 85,) we know that this allegation is not true. Joseph A. Borders was unquestionably elected county treasurer for that county, and Bentley was not elected. But for the purposes of this case, we shall also consider the allegation of the plaintiff below, that Bentley was elected county treasurer, as true. We think in all probability that very nearly all the persons whose names were on the opposition ticket were elected, and that not more than about three of the persons whose names were on the Syracuse ticket were elected; but for the purposes of this case we shall consider all the allegations of the plaintiff as true, and upon that theory we shall decide this case. The canvass of the election, as shown by "Exhibit A" of the plaintiff's petition, and as stated by the county commissioners and the county clerk, in tabular form, is as follows:

EXHIBIT A.

ABSTRACT OF VOTES, polled on Tuesday, Nov. 2d, 1886, in the several voting precincts of Hamilton county, Kansas, at the election held by order of the Board of County Commissioners of said county, under the statutes in such cases made and provided, for the election of county officers, which canvass was held in the court room, in the town of Kendall, the temporary county seat of Hamilton county, on Friday, Nov. 5th, 1886.

| Voting precincts. | Representative. | | Commissioners. 1. | Commissioners. 2. | Commissioners. 3. | Judge.* | | | District Clerk.† | | | Superintendent. | | | County Attorney. | | Sheriff. | | County Clerk.‡ | | | | Treasurer. | | | Register of Deeds. | | | Surveyor. | | Coroner. | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | J. H. Hibbits | J. T. Kirtland | L. C. Swink / James H. Gates / M. Young | A. A. G. Stayton / J. A. Wickersham | G. W. Knapp / S. S. Taggert | Mansfield Young | C. H. Fryberger | Will C. Higgins | M. G. Fulton | H. J. Fulton | W. P. Humphrey | N. W. Lanondecker | J. R. Campbell | C. N. Garten | J. J. Milliken | G. M. Smith | C. C. Mills | S. J. Densen | H. A. W. Corfield | C. C. Free | J. M. Hicks | Thomas H. Ford | M. S. Culver | J. H. Borders | J. H. Bentley | H. H. Warner | F. M. Kelley | J. P. Gardner | J. W. Beatty | John Robertson | G. C. Furgeson | G. C. W. Richards | J. N. Slown |

Coolidge town ................
Grant Surprise ...............
Ulysses ......................
Shockeyville .................
Golden .......................
Hartland town ................
Hoover .......................
Kendall town .................
Coomes pre ...................
Stanton town .................
Syracuse town ................

Totals .......................

*J. C. Fryberger, 1.    †L. C. Free, 1.    ‡Free, 1.

We, the Commissioners of Hamilton county, hereby certify that the above is a true and complete abstract of the votes polled for county officers at the election for county officers, held in Hamilton county, Kansas, on the 2d day of November, 1886, as shown by a canvass, of the returns of said election as made by the respective boards of election of the several voting precincts of said county. The candidates having received the largest number of votes, as shown by the foregoing abstract, are hereby declared elected to their respective offices, viz.: Representative, J. T. Kirtland; Commissioner District No. 1, L. C. Swink; No. 2, A. A. G. Stayton; No. 3, S. S. Taggert; Probate Judge, Will. C. Higgins; District Clerk, W. P. Humphrey; Superintendent, C. N. Garten; Attorney, G. M. Smith; Sheriff, C. C. Mills; County Clerk, J. M. Hicks; Treasurer, J. H. Bentley; Register of Deeds, J. P. Gardner; Surveyor, J. W. Beatty; Coroner, J. N. Slown.

L. C. SWINK, Chairman,
T. J. BARTON,
W. H. D. SHOCKEY,
Commissioners.

Attested: THOS. H. FORD,
County Clerk.
[Seal.]

It will be seen from the above statement that the election returns from Coomes precinct were not canvassed at all. This is the same election and these the same returns as were commented on in the case of *The State, ex rel., v. Mills, Sheriff,* ante, p. 76. After the election, the majority of the persons whose names were on the ticket supported by the friends of Syracuse, attempted to institute the county government of Hamilton county at Syracuse, while those persons whose names were on the ticket supported by those who were opposed to Syracuse for the county seat, attempted to retain the county government at the town of Kendall, and attempted to hold the offices there; and this action is substantially a contest for the county offices between the persons voted for on the Syracuse ticket, and the persons voted for on the opposition ticket. The plaintiff represents the Syracuse ticket, and the defendants represent the opposition ticket. The real questions to be determined in this case are : Who are entitled to the county offices of Hamilton county ? A preliminary question arises, however, which is this : Is injunction the proper remedy to determine the title to a public office ? Mr. High, in his work on Injunctions, uses the following language :

"No principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence, is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment of public officers or their title to office, such questions being of a purely legal nature, and cognizable only by courts of law. A court of equity will not permit itself to be made the forum for determining disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the claimant of the office to pursue the statutory remedy, if there be such, or the common-law remedy by proceedings in the nature of a *quo warranto.* Thus, equity will not interfere by injunction to restrain persons from exercising the functions of public offices, on the ground of the illegality of the law under which their appointments were made, but will leave that question to be determined by a legal forum. And a temporary injunction granted *pendente lite,* and until the question of the validity of the law under which defendants claim their offices can be determined, will be dis-

**1. Title to office, action to determine.**

solved. So, where a specific remedy by *quo warranto* exists at law for the unlawful usurpation of an office by one not entitled thereto, a court of equity will not entertain jurisdiction of the offense, and will not grant an injunction against the incumbent of the office. Especially will the court refuse to interfere where the answer fully denies the equity of the bill, and shows satisfactorily that defendant has a legal right to the office in question. Nor will the right to an office in an incorporated company be tried upon an application for an injunction; nor will one who has been wrongfully removed from such an office be restored by injunction." (2 High Inj., § 1312. See also cases there cited. See also §§ 1313 to 1315, and cases there cited.)

We think the foregoing is a correct statement of the law, and applicable to this case. The plaintiff, however, desires to have the case decided upon a different set of principles, and cites the following authorities: *McCahon v. Comm'rs of Leavenworth Co.*, 8 Kas. 437; *The State v. Durkee*, 12 id. 308; *Brady v. Sweetland*, 13 id. 41; *The State, ex rel., v. McLaughlin*, 15 id. 228; *Braidy v. Theritt*, 17 id. 468; *Ewing v. Thompson*, 43 Pa. St. 372; *Kerr v. Trego*, 47 id. 292; McCrary on Elections, 2d ed., § 208; High Inj., § 1315; Hill. Inj., 2d ed., 443; 1 Dill. Mun. Corp. 275. The plaintiff claims and alleges that by the election held on November 2, 1886, the town of Syracuse was chosen as the permanent county seat of Hamilton county, and that the persons voted for on the Syracuse ticket, with about four exceptions, were elected as the county officers of that county; that such persons duly qualified and entered upon the discharge of their duties at Syracuse, and thereby became the *de facto* officers for the offices which they respectively claim; that the defendants were not elected at that election or at any other election, to the offices which they claim, but are mere intruders, and may be restrained by injunction from exercising the functions of the various offices which they respectively claim. We do not think that these claims of the plaintiff are tenable. It is true that the plaintiff alleges, in general terms, that certain persons whose names were on the Syracuse ticket were elected to the various offices

for which they were candidates; but the plaintiff also gives us a statement of the canvass of the election returns made by the county commissioners, which statement shows how the vote stood in all the townships and precincts of Hamilton county except Coomes precinct, and it does not show what the vote was in that precinct. The canvass was not complete, and why it was left incomplete is not shown. This statement shows that the returns from Coomes precinct were not canvassed at all. Now may not the vote in Coomes precinct, if it were counted, change the entire result of the election in Hamilton county? We know from other cases which we have had before us, that such vote does change the result in some particulars. By counting the vote of that precinct we know that Syracuse was not chosen the permanent county seat of Hamilton county, and we know that J. H. Bentley was not elected county treasurer. No explanation with regard to the vote in Coomes precinct has been given in this case; and according to the well-settled rules of pleading, everything must be taken the most strongly against the pleader.

But even if the persons who the plaintiff claims were elected on the Syracuse ticket were in fact elected, still their election and qualification would not make them officers *de facto*. Before a person can become an officer *de facto* he must obtain the *actual* possession of the office; he must obtain the possession of the office *in fact;* and he must generally be recognized as the officer. Now it is admitted that Kendall was the county seat of Hamilton county up to the time when the canvass of the election was made, and it is shown that the canvass was actually made at Kendall, and of course as Kendall was the county seat up to that time it must be presumed that all the county offices were in fact held in Kendall. Now there is no allegation that the Syracuse officers went to Kendall and there took the possession of their offices. It is not alleged that they obtained the possession of the rooms where the offices were held, or of anything else belonging or appertaining to the offices, but they simply, after their election and qualification, entered upon the discharge of their respective

duties at Syracuse; and it does not appear that they were rec-
ognized by the people generally of that county or elsewhere
as county officers *de facto*. On the other hand, the persons
whom the plaintiff alleges were not elected, but who claim to
be the county officers, were and are attempting to perform the
duties of their respective offices at Kendall; and in all proba-
bility they have the possession of the very rooms which were
previously, and up to the time of the canvass, occupied by the
county officers for their offices; and they probably also have
the possession of the office furniture, and they have the pos-
session of at least a portion of the records of the county be-
longing to their respective offices. In all probability they
are the real officers *de facto*. The plaintiff, however, alleges
that they took the possession of a portion of the records "un-
lawfully and forcibly," and then refused to permit the Syra-
cuse officers to remove the same. It is true, as claimed by the
plaintiff, that in this state it has been decided, and well de-
cided, as we think, that "two persons cannot be officers *de facto*
for the same office at the same time." (*McCahon v. Comm'rs
of Leavenworth Co.*, 8 Kas. 437;) and that the actual incum-
bent of an office, the real officer *de facto*, will be protected by
the courts in the performance of the duties of the office, until
it may be determined by an appropriate proceeding who is in
law and in fact entitled to the office. (*The State v. Durkee*, 12
Kas. 308; *Brady v. Sweetland*, 13 id. 41; *Braidy v. Theritt*,
17 id. 468.) The first two of the last three cases cited were
actions in the nature of *quo warranto*. The last case cited
was injunction. But the present case does not come within
these principles. Nor does it come within the principles enun-
ciated in the case of *Kerr v. Trego*, 47 Pa. St. 292. (See also
*Updegraff v. Crans*, 47 Pa. St. 103.) It can hardly be said
in the present case that it is sufficiently alleged that the Syra-
cuse officers were either officers *de facto* or *de jure*. The alle-
gations of the plaintiff's petition, including the statement of
the canvass of the election returns, leaves it open to suppose
that the Kendall officers were both officers *de facto* and *de jure*,
and it cannot be said that the Kendall officers are disturb-

ing or attempting to disturb the Syracuse officers in their attempt to exercise the functions of county officers at Syracuse, or in their use of anything of which they, the Syracuse officers, have possession.   The Syracuse officers are peaceably and quietly attempting to hold their offices at Syracuse, while the Kendall officers are peaceably and quietly attempting to hold their offices at Kendall, and there is no pretense that the Kendall officers are likely to go to Syracuse and disturb the Syracuse officers at that place.   This case really does not come within the authorities cited by the plaintiff, and the only effect of a final determination in the case, if the case were decided as the plaintiff desires that it should be decided, would be to determine and settle the disputed questions as to who are entitled to the county offices of Hamilton county.

2. Quo warranto, not injunction, to restrain official acts.   These questions cannot properly be determined by an action for an injunction.   The only proper remedy by which such questions may be determined is *quo warranto*, which is a plain, simple, adequate and complete remedy.   It is no more cumbrous or dilatory than the remedy of injunction, and it is much more comprehensive, complete, and appropriate.   And the equitable jurisdiction to restrain by injunction will never be exercised where another plain and adequate remedy exists.   The equities, however, in this case, are not shown to be in favor of the Syracuse officers or the plaintiff.   Undoubtedly an action in the nature of *quo warranto* ought to have been brought in favor of one side or the other to determine the disputed questions arising in this case, to determine which of the two sets of county officers is entitled to the county offices; and in such an action all the disputed questions relating to the offices could be determined. This present action is not appropriate for the purpose, and it cannot be maintained.

Before closing this opinion, it might perhaps be well to state how the persons admitted to have been elected on the opposition ticket have been disposed of.   They have been disposed of as follows : It is alleged that A. A. G. Stayton, who was elected one of the county commissioners, and J. M. Hicks, who was

elected county clerk, did not qualify, and that other persons have been appointed in their places. Hicks, however, is attempting to hold his office of county clerk at Kendall, and John Spear is his deputy. It is also alleged that an action has been commenced against C. C. Mills, who was elected sheriff, and who is now holding his office at Kendall, to compel him to remove his office to Syracuse; but we have just decided in such action that Mills is holding his office at the right place. ( *The State, ex rel., v. Mills, Sheriff,* ante, p. 76.) J. W. Beatty, who was elected county surveyor, is perhaps holding his office at Syracuse.

With the views which we entertain concerning the questions already discussed, it is unnecessary to discuss any of the other questions presented by counsel for the plaintiffs in error, defendants below.

The order of the judge of the court below granting the temporary injunction will be reversed, and the cause remanded.

All the Justices concurring.